**CENTRAL SHIPPING COMPANY LTD., Plaintiff,**

v.

**INTERNAUT SHIPPING LTD., Defendant.**

**No. 09 Civ. 6222 (VM).**

United States District Court, S.D. New York.

Nov. 25, 2009.

Opinion Denying Reconsideration and Granting Leave to File Interlocutory Appeal Jan. 11, 2010.

Michael Joseph Walsh, Burke & Parsons, New York, NY, for Plaintiff.

George Michael Chalos, Chalos & Co., P.C., Oyster Bay, NY, for Defendant.

VICTOR MARRERO, District Judge.

Following the issuance of the ruling by the Court of Appeals for the Second Circuit in *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir.2009), defendant Internaut Shipping Ltd. ("Internaut"), by letter dated October 27, 2009, requested the Court to reopen this matter and to vacate the writ of attachment authorized by the Court in this case by Order dated July 15, 2009 as subsequently amended (the "Attachment Order"). Internaut further seeks release of the bond in an amount of $5,448,322.30 (the "Bond") posted by Internaut pursuant to an Order of this Court dated July 27, 2009 approving the parties' substitute security agreement (the "Bond Agreement").

Plaintiff Central Shipping Company, Ltd. ("Central Shipping") responded by letter dated November 19, 2009. It argued that Jaldhi does not apply to the circumstances of this case because, pursuant to the Bond Agreement, property in an amount of $108,641.14 that was originally attached as an electronic funds transfer ("EFT"), was actually released to Internaut as the beneficiary of the EFT, and that Internaut had subsequently posted

the Bond pursuant to an independent voluntary agreement that was unaffected by *Jaldhi.* On this basis. Central Shipping contends that this case, unlike *Jaldhi,* does not relate to an EFT currently under restraint at an intermediary bank, but rather involves the substitute security later voluntarily posted in the form of the Bond.

Recently, the Second Circuit issued a decision in *Hawknet, Ltd. v. Overseas Shipping Agencies,* 590 F.3d 87 (2d Cir. 2009), in which it held that *Jaldhi* applies retroactively, and that a party's failure to assert a challenge to personal jurisdiction in the District Court in light of controlling Circuit law prior to *Jaldhi* does not constitute a waiver of an objection on jurisdictional grounds. Central Shipping maintains that because *Jaldhi* does not apply here, *Hawknet* has no bearing.

▮ The Court views *Jaldhi* and *Hawknet* as inapplicable to the circumstances of this case. Under the Bond Agreement, Internaut reserved any rights and defenses available to it, including in respect of challenging the validity of the Attachment Order, which it has done in the instant proceeding. However, Internaut obtained a vacatur of the Attachment Order and a release of all property in the hands of any garnishee that was restrained in connection with this action. Thus, by its dissolution, as of July 27, 2009 the Attachment Order was no longer in effect. Accordingly, to the extent the relief Internaut now seeks from the Court is to vacate the Attachment Order, the simple response is that that Order was already set aside on July 27, 2009. In essence, what Internaut really asks the Court to do in this proceeding is not to vacate an attachment order that it contends was improperly issued, but rather to nullify a contract under which the parties exchanged mutual promises, rights and obligations that they have complied with up to now. That agreement,

embodied in an Order by this Court, is presumptively valid. Other than its challenge to the Attachment Order, Internaut presents no arguments contesting the legality of the Bond Agreement.

Moreover, even if, as *Jaldhi* later determined, the Attachment Order improperly restrained any EFT assets, under the Bond Agreement that property was released to Internaut. At that point this action continued in this Court not by virtue of quasi in rem jurisdiction over Internaut conferred by the restraint of an EFT pursuant to the Attachment Order, but consensually by the terms of the parties' Bond Agreement. That accord provides that upon vacatur of the Attachment Order, as occurred by the Court's endorsement, "the case shall proceed in ordinary course." (Bond Agreement ¶ 3.) The Court reads this provision to effectuate Internaut's voluntary consent to the Court's exercise of jurisdiction over it, on a basis other than the attachment vacated by the Court-ordered Bond Agreement.

▮ Moreover, as now postured, the case presents equitable circumstances that warrant denial of Internaut's request. The Bond Agreement directed release of any property restrained pursuant to the Attachment Order, without regard to the source of any such property. Theoretically, therefore, the assets released to Internaut could have encompassed property not originating from EFTs. More significantly, Central Shipping agreed to refrain from arresting, attaching or otherwise restricting any vessels or other assets of Internaut in any jurisdiction in relation to the claim at issue. (*See id.* ¶ 6.) Under this provision, unrelated to any EFT assets originally restrained and then released, Internaut has obtained the substantial benefit of its bargain for posting the Bond. Conceivably, from the date the Bond Agreement was entered into the

parties' litigation positions could have changed materially. Central Shipping, relying upon the Bond Agreement, may have foregone opportunities to restrain Internaut vessels or attach other assets that may not now be available. Under these circumstances, Internaut would be restored to its position prior to the Attachment Order, while Central Shipping could be deprived of potential benefits of an agreement that took effect after the Attachment Order challenged here no longer existed. These considerations persuade the Court that granting Internaut's request would be unwarranted and inequitable. *See Vaughan v. Atkinson*, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) ("Equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief."); *Greenwich Marine, Inc. v. Alexandra*, 339 F.2d 901, 905 (2d Cir.1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge"....).

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the request of defendant Internaut Shipping Ltd. ("Internaut") for an order vacating the attachment order dated July 15, 2009 and releasing the bond posted by Internaut as substitute security pursuant to the Court's Order dated July 27, 2009 is DENIED.

**SO ORDERED.**

### DECISION AND ORDER

By Order dated November 25, 2009 (the "November 25 Order") the Court denied the application of defendant Internaut Shipping Ltd. ("Internaut") for an order vacating the attachment order dated July 15, 2009 (the "July 15 Order") and releasing the bond posted by Internaut as substitute security pursuant to the Court's

Order dated July 27, 2009 (the "July 27 Order"). Pursuant to the July 15 Order, plaintiff Central Shipping Company Ltd. ("Central") restrained assets of Internaut in an amount of $118,641.17 in the form of electronic fund transfers ("EFT") in the hands of certain intermediary garnishee banks. The parties then negotiated an agreement (the "Bond Agreement") pursuant to which Internaut provided a bond in an amount of $5,485,322.30 (the "Bond") as substitute security for the restrained EFT assets. The Bond Agreement provided for the revocation of the July 15 Order, for the return of the attached funds to Internaut, and for this action to "proceed in ordinary course." (July 27 Order at 2.) However, Internaut's provision of the Bond was without waiver of any rights and defenses in respect of the July 15 Order, including the right to challenge the validity of the attachment.

On October 16, 2009, the Court of Appeals for the Second Circuit issued a decision in *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir.2009), holding that an attachment of assets flowing through intermediary banks as EFTs cannot serve as sufficient ground to support an exercise of jurisdiction by federal courts in cases brought under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Subsequently, in *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87 (2d Cir.2009), the Second Circuit held that *Jaldhi* applied retroactively to invalidate Rule B maritime attachment orders insofar as based on EFTs.

In its November 25 Order, the Court denied Internaut's request to vacate the July 15 Order and release the Bond. The Court determined that *Jaldhi* and *Hawknet* did not apply to this case, reasoning that by the terms of the Bond Agreement and the Court's July 25 Order approving

it, the July 15 Order had already been vacated and Internaut had obtained a return of the funds that had been restrained pursuant to it. Thus, the Court found that there was no order then in effect for the Court to vacate. Insofar as the Bond had been posted and remained in place as substitute security in connection with the parties' litigation, the Court determined that that circumstance followed from the parties' Bond Agreement, pursuant to which they exchanged other mutual promises, rights and obligations, such as Central Shipping's commitment not to attach other Internaut assets, arrest Internaut's ships or otherwise disrupt Internaut's maritime operations. As the Court viewed the matter, while it was true that Internaut provided the Bond because of Central Shipping's restraint of the EFTs, it was also true that, unlike many other maritime attachment cases the Court had previously encountered involving a substitution of security, the original attachment order authorizing the EFTs did not remain in effect, but rather was actually vacated by the Court. Consequently, to that extent the exercise of the Court's jurisdiction in this action no longer rested on an EFT-grounded order. Moreover, by posting the Bond and allowing this case to proceed, Internaut was able to secure the substantial benefits that the Bond Agreement provided to it in protecting other assets from restraint.

Accordingly, the Court determined that with the vacatur of the July 15 Order and release of the restrained EFT assets to Internaut, the parties' litigation in this Court continued not by reason of quasi in rem jurisdiction obtained by the attachment of the EFTs, but consensually by the posting of the Bond pursuant to the terms of the Bond Agreement.

Finally, the Court relied upon equitable considerations for not releasing the Bond under the posture of the case as then presented. Specifically, the Court considered that circumstances had materially changed, in that, by complying with the Bond Agreement, Central Shipping had surrendered rights and potential opportunities to attach other non-EFT assets or arrest ships belonging to Internaut, thereby experiencing substantial prejudice if the Bond were released.

■ Internaut now moves for reconsideration or, in the alternative, leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Upon review of the papers submitted in favor of and against the motion, the Court denies the application for reargument. The Court finds nothing in Internaut's papers pointing to new evidence or controlling decisions not considered by the Court that might reasonably be expected to alter the outcome. *See* Local Civil Rule 6.3; *Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir.1995).

■ The Court is persuaded, however, that the circumstances presented by this case are sufficiently exceptional to warrant leave for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). To satisfy the requirements of that statute, the moving party must demonstrate that the order sought to be appealed "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292; *In re Flor,* 79 F.3d 281 (1996). Following *Jaldhi* and *Hawknet,* the rules of maritime law that govern the instant dispute have been in a state of the flux in this Circuit. Numerous rulings issued by the district courts have addressed various relevant issues opened by *Jaldhi* and *Hawknet,* not

all in full agreement and some raising questions as to which there is substantial ground for difference of opinion. *See, e.g., Global Mar. Invest. v. Companhia Siderurgica Nacional,* No. 08 Civ. 11199, 2009 WL 4730196, 2009 U.S. Dist. LEXIS 115218 (S.D.N.Y. Dec. 9, 2009); *HC Trading Int'l Inc. v. Crossbow Cement, S.A.,* No. 08 Civ. 11237, 2009 WL 4931341, 2009 U.S. Dist. LEXIS 11876 (S.D.N.Y. Dec. 21, 2009). In addition, *Jaldhi* has undoubtedly spawned considerable additional appeals now pending before the Circuit Court. Insofar as the instant case presents a unique aspect of the controversy, its resolution in this context may certainly advance the termination not only of this dispute but of other related litigation. Accordingly, the Court grants this part of Internaut's application.

## ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 23) of defendant Internaut Shipping Ltd. for reconsideration is DENIED and its motion in the alternative for leave to file an interlocutory appeal of the Court's Order dated November 25, 2009 pursuant to 28 U.S.C. § 1292(b) is GRANTED.

**SO ORDERED.**