**Lisa LEWIS–RAMSEY and Deborah K. Jones, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**The EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, Defendant.**

3:16–cv–00026

United States District Court, S.D. Iowa, Central Division.

Signed 09/21/2016

Anthony James Lazzaro, Chastity Lynn Christy, Lazzaro Law Firm, Cleveland, OH, Harley C. Erbe, Erbe Law Firm, Des Moines, IA, for Plaintiffs.

Catherine A. Cano, Jackson Lewis P.C., Omaha, NE, for Defendant.

## ORDER

### ROBERT W. PRATT, Judge, U.S. DISTRICT COURT

On June 15, 2016, Lisa Lewis–Ramsey and Deborah K. Jones ("Plaintiffs"), on behalf of themselves and all others similarly situated, filed a Second Amended Complaint against the Evangelical Lutheran Good Samaritan Society ("Defendant"), asserting claims for: (1) failure to pay overtime compensation between January 1, 2015 and October 13, 2015; (2) failure to pay overtime compensation between October 13, 2015 and November 7, 2015; and (3) failure to pay for all hours worked between January 1, 2015 and the present.[1] Clerk's No. 28. On June 16, 2016, Defendant moved to dismiss Plaintiffs' Second Amended Complaint to the extent it seeks payment of wages for the time period between January 1, 2015 and November 12, 2015. Clerk's No. 29. Plaintiffs filed a resistance to Defendant's Motion on June 30, 2016. Clerk's No. 35. Defendant filed a Reply on July 11, 2016. Clerk's No. 38. Plaintiffs filed a Notice of Supplemental Authority in Support of Their Brief in Resistance to Defendant's Partial Motion for Dismissal on July 19, 2016. Clerk's No. 39. The matter is fully submitted.

## I. FACTUAL BACKGROUND

In 1974, Congress amended the Fair Labor Standards Act ("FLSA") to include a variety of "domestic service" employees who were not previously encompassed by the statute's minimum wage and maximum hour requirements. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007). The 1974 Amendments, however, created an exception to the rule, exempting from FLSA coverage "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15). According to DOL interpretations, the so-called "companionship exemption" made the FLSA inapplicable to any companionship worker who is "employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a).

In October 2013, the DOL issued a Final Rule amending the companionship exemption "to better reflect Congressional intent given the changes to the home care industry and workforce since [the time of the 1974 Amendments]." *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,455 (Oct. 1, 2013). Under the Final Rule, which has an effective date of January 1, 2015, third-party employers of home health care workers, such as Defendant, would no longer be permitted to "avail themselves" of the companionship exemption. *See id.*; 29 C.F.R. § 552.109(a).

On June 6, 2014, the Homecare Association of America ("HCAOA")[2] sued the DOL in the United States District Court

---

1. The Second Amended Complaint also seemingly asserts a claim for "failure to keep accurate records." *See* 2d Am. Compl. ¶ 41. Plaintiffs have affirmatively represented to the Court, however, that they did not intend to allege "an independence cause of action with respect to Defendant's record keeping violations." Pl.'s Resistance Br. (Clerk's No. 35) at 18.

2. The HCAOA is a "group of trade associations representing third-party agencies that employ home care workers." *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1089 (D.C. Cir. 2015). According to Defendant, it is a "Voting Member of the HCAOA." Def.'s Reply Br. at 4.

for the District of Columbia, seeking declaratory and injunctive relief preventing the Final Rule from taking effect. *See Home Care Assoc. of Am. v. Weil*, 78 F.Supp.3d 123 (D.D.C. 2015). On December 22, 2014, the district court vacated the Final Rule as it applied to third party employers. *Id.* at 124–25. On January 14, 2015, the district court vacated the remainder of the Final Rule, which rewrote the definition of "companionship services," concluding that the DOL was improperly attempting "to do through regulation what must be done through legislation." *Id.* at 130. On August 21, 2015, the Court of Appeals for the District of Columbia unanimously found the Final Rule valid and "reversed the district court's vacatur of 29 C.F.R. § 552.109." *Home Care Assoc. of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015). On September 14, 2015, the DOL announced a 30–day "non-enforcement" policy, stating it "will not bring enforcement actions against any employer for violations of FLSA obligations resulting from the amended domestic service regulations for 30 days after the date the Court of Appeals issues a mandate making its opinion effective." 80 Fed. Reg. 55,029 (Sept. 14, 2015). The Court of Appeals issued its mandate on October 13, 2015 and the DOL began implementing certain enforcement mechanisms thirty days later, on November 12, 2015.

## II. LAW AND ANALYSIS

Defendant requests that the Court dismiss Plaintiffs' claims to the extent they seek wages for the time period between January 1, 2015—the original effective date of the Final Rule—and November 12, 2015—the date when the DOL commenced enforcement of the Final Rule following the mandate by the Court of Appeals. In particular, Defendant argues that the Final Rule was unenforceable during this period because it had been vacated by the district court pursuant to a valid and effective order. Def.'s Br. at 11–17. According to Defendant, "[a] reviewing court's ability to stay or set aside administrative rules would be severely undermined if the reversal by an appellate cou[rt] would render such action void retroactively and create liability where no[ne] previously existed." *Id.* at 16. Defendant further argues that the DOL's decision not to bring enforcement actions against employers until 30 days after the Court of Appeals' mandate supports its assertion that the Final Rule should not be deemed retroactively effective. Defendant cites *Bangoy v. Total Homecare Solutions, LLC*, No. 1:15-cv-573, 2015 WL 12672727, 2015 U.S. Dist. LEXIS 177859 (S.D. Ohio Dec. 21, 2015), in support of its position. In that case, the plaintiffs claimed that the defendant was liable for wage claims dating back to January 1, 2015, because the defendant "had substantial notice that the new rule was going into effect and … it gambled that the district court's decision vacating the rule would be upheld on appeal and lost." *Id.* at *2, 2015 U.S. Dist. LEXIS 177859 at *4. The district court rejected plaintiffs' argument and dismissed the plaintiffs' FLSA claim for the period when the Final Rule was vacated:

> The district court in the *Weil* cases vacated the rule that purportedly required THS to pay Plaintiffs overtime wages before it could go into effect. In the Court's view, THS was entitled to rely on that decision in not paying Plaintiffs overtime for the interim period now at issue in this case. Any other conclusion would put THS, and other similarly-situated employers, in an untenable position. THS could have complied with the vacated rule at the risk of paying Plaintiffs overtime wages to which they were not entitled if the Court of Appeals affirmed the district court's judgment. Or, THS

could have done what it did here, rely on the vacatur of the rule but then, according to Plaintiffs, be liable to them for FLSA damages if the Court of Appeals reversed the district court's judgment. Plaintiffs, however, cite no authority for their "heads I win, tails you lose" theory of the case. Certainly those arguments are disfavored by courts. And, as THS persuasively argues, when the district court vacated the rule before its effective date, it became a nullity and unenforceable. Moreover, permitting Plaintiffs to recover for a violation of the rule while the vacatur was in effect would give the rule an impermissible retroactive effect. Finally, the fact that the DOL has indicated that it will not bring enforcement actions for violations that occurred before the Court of Appeals reinstated the rule ... strongly suggests that the rule should not be given retroactive effect in cases between private parties. Indeed, "[g]ood administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons."

*Id.* at *3, 2015 U.S. Dist. LEXIS 177859 at *6–8 (internal citations omitted).

Plaintiffs counter that the effective date of the Final Rule has always been January 1, 2015. Pl.'s Br. at 5. They urge that well-established principles of law provide that while statutes and regulations operate prospectively, judicial decisions are applied retrospectively. *See id.* at 5 (citing *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) ("The principle that statutes operate only prospectively, while judicial decision operate retrospectively is familiar to every law student.")). They further point out that the "effect of a reversal of a judgment is to

nullify it completely and to leave the case standing as if such judgment ... had never been rendered." *Id.* (quoting *CGB Occupational Therapy v. RHA Health Servs. Inc.*, 499 F.3d 184, 188 n.2 (3d Cir. 2007)). Thus, according to Plaintiffs, Defendant may not rely upon the "erroneous judgment [of the district court] to escape liability under the valid third-party employer regulation that has an effective date of January 1, 2015," because the Court of Appeals decision reversing the district court made it as if the vacatur of the Final Rule never occurred. *Id.* at 6. Plaintiffs cite *Kinkead v. Humana, Inc.*, No. 3:15-cv-01637, 2016 WL 3950737 (D. Conn. July 19, 2016), in support of its position. Considering the same "temporal question" now before this court, Judge Jeffrey Meyer stated:

> [P]laintiff contends that defendants may not seek any benefit from the district court's vacatur of the DOL rule because neither plaintiffs nor defendants were parties to the proceedings before the district court in the District of Columbia. I do not agree. The Administrative Procedure Act authorizes a federal court to "set aside" unlawful agency action, such as the agency's promulgation of a rule that is arbitrary or capricious, that exceeds the agency's authority or limitations under a statute, or that is otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A) & (C); *see, e.g., Encino Motorcars, LLC v. Navarro*, —— U.S. ——, 136 S.Ct. 2117, 195 L.Ed.2d 382 (2016). This language bespeaks an authority to set aside an entire rule, not merely to preclude its enforcement in a particular case.
>
> Moreover, when a court vacates an agency's rule, such a vacatur "restores the status quo before the invalid rule took effect, and the agency must initiate another rulemaking proceeding if it would seek to confront the problem

anew." *Envtl. Def. v. Leavitt*, 329 F.Supp.2d 55, 64 (D.D.C. 2004); *see also* Action on Smoking & Health v. C.A.B., 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam) (noting that "[t]o vacate, as the parties should well know, means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside," and that vacatur "had the effect of reinstating the rules previously in force"); *Resolute Forest Products, Inc. v. U.S. Dep't of Agric.*, 130 F.Supp.3d 81, 103–04 (D.D.C. 2015) (discussing district court's discretion to vacate a regulation or to remand to the agency for further consideration while in the interim leaving the regulation in effect).

In light of the fact that the district court vacated the new rule, it is not surprising that defendants refrained from paying overtime to plaintiff while the district court's decision remained valid. But, of course, the district court ruling was promptly challenged in the D.C. Circuit, and the real question here is whether the D.C. Circuit's subsequent reversal of the district court's vacatur means that defendants became liable to pay plaintiff overtime for the periods that she worked while the district court's decision had been in effect. The answer to this question follows from the well-established rule that judicial decisions are presumptively retroactive in their effect and operation. The ruling of the Supreme Court or of a federal court of appeals within its geographical jurisdiction "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125

L.Ed.2d 74 (1993); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758–59, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (re-affirming *Harper* and rejecting authority of a court absent "special circumstances" to circumvent retroactive application of a judicial decision by means of invoking its remedial discretion).

Despite defendants' arguments that they relied on the district court's decision, any such reliance would not justify a non-retroactive application of the D.C. Circuit's ruling. *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 215 (2d Cir. 2010) (noting that the Supreme Court has identified only two classes of cases in the qualified immunity and habeas corpus contexts "that may justify suspending the ordinary presumption in favor of retroactivity" of judicial decisions); *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 91 & n.7 (2d Cir. 2009) (despite fact that "the parties relied on [prior overruled decision] when structuring their transactions, the Supreme Court has held that a reliance interest is insufficient to overcome the presumption of retroactivity set forth in *Harper*"); *Heartland By–Products, Inc. v. United States*, 568 F.3d 1360, 1365 (Fed.Cir. 2009) (federal appellate court's ruling reversing lower court's invalidation of higher tariff rates applied retroactively to tariff rates for imports prior to appellate court's ruling); *National Fuel Gas Supply Corp. v. F.E.R.C.*, 59 F.3d 1281, 1288 (D.C. Cir.1995) (rejecting argument that D.C. Circuit's prior vacatur of an administrative decision should not apply retroactively absent "the most compelling circumstances"); see generally Daniel H. Conrad, *Filling the Gap: The Retroactive Effect of Vacating Agency Regulations*, 29 Pace Envtl. L. Rev. 1

(2011) (suggesting strong reasons supporting retroactivity of judicial vacatur of agency regulations).

Nor am I persuaded as a practical matter that defendants have any justifiable reliance interests that would warrant protection here. The DOL allowed more than a year from its promulgation of the new rule in 2013 until its effective date in 2015; defendants had ample notice of the obligations to be imposed by the new rule. Although defendants might have hoped that the district court's decision would spare them from having to pay overtime, they were doubtlessly aware of a likelihood that the D.C. Circuit would do just what appellate courts often do—reverse the decision of a district court.

*Id.* at *2–3.[3]

After careful consideration of the parties' submissions, the Court adopts the extremely well-reasoned opinion of Judge Meyer and concludes that the effective date of the Final Rule is January 1, 2015. The Court explicitly rejects Defendant's argument that it would be unfair to ignore the district court's vacatur of the Final Rule and "create liability where no[ne] previously existed." Def.'s Br. at 16. This case presents nothing out of the ordinary when it comes to the authority of a Court of Appeals to render null and void decisions of the district court with which it disagrees. Indeed, it strikes the Court as far more "unfair" to allow Defendant to escape liability for nearly a year's worth of overtime wages based on a district court decision that was ultimately deemed to be error. The Court additionally rejects Defendant's argument that the DOL's deci-

sion to delay its own discretionary enforcement of the Final Rule somehow mandates that private enforcement actions must also be delayed, particularly where the DOL has consistently maintained that the effective date of the Final Rule is January 1, 2015. *See* Pls.' Br. at 15.

## III.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Partial Dismissal (Clerk's No. 29) is DENIED.

IT IS SO ORDERED.

---

**3.**  Plaintiffs also cite *Beltran v. InterExchange, Inc.,* 176 F.Supp.3d 1066 (D. Colo. 2016). There, the district court concluded without discussion that plaintiffs had stated a "viable claim for overtime for any work performed

after January 1, 2015, due to a new DOL regulation, recently upheld by the District of Columbia Circuit Court of Appeals." *Id.* at 1083.